UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
EBF HOLDINGS, LLC d/b/a EVEREST
BUSINESS FUNDING,

                                                      **REPORT AND**
                                                      **RECOMMENDATION**
                      Plaintiff,               CV 23-4579 (NCM)(AYS)

     -against-

BATURER INC and
NAIME BATURER,

                      Defendant.
---------------------------------------------------X
**SHIELDS, Magistrate Judge,**

      Plaintiff EBF HOLDINGS, LLC d/b/a EVEREST BUSINESS FUNDING ("EBF" or "Plaintiff") brings this action against Defendants BATURER INC ("Baturer") and NAIME BATURER (the "Guarantor") (collectively referred to as "Defendants"), for damages of $102,979.95 plus attorneys' fees and costs.

      The case was commenced in June of 2023. See Compl., Docket Entry ("DE") [1]. Defendants failed to answer and Plaintiff thereafter requested entry of a certificate of default. The Clerk of the Court has issued that certificate, and Plaintiff has moved for entry of judgment thereon. Presently before this Court is the District Court's referral of Plaintiff's motion for issuance of a Report and Recommendation as to whether Plaintiff has established Defendants' liability such that the motion should be granted, and if so, to determine the appropriate amount of damages, costs, and/or fees, if any, awarded. For the reasons set for below, this Court respectfully recommends entry of judgment on behalf of the Plaintiff and that a judgment awarding damages in the amount of $102,979.95 and pre-judgment interest from May 3, 2022,

through entry of judgment be entered against the Defendants. Further, the court respectfully recommends post-judgment interest be awarded at a rate pursuant to 28 U.S.C.A § 1961.

## BACKGROUND

I. Facts

The following facts, adduced from Plaintiff's Complaint, the affidavit of Tracy Parks ("Parks Aff."), and the exhibits attached thereto, are undisputed and taken as true for purposes of deciding this motion. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

EBF is a limited liability company organized and existing under the laws of the state of Delaware with members that are natural persons and citizens of Florida, Colorado, and Texas. See Compl. ¶ 1. Baturer is a corporation organized and existing under the laws of the state of New York, with a principle address of 1979 Veteran Highway, Mastic, New York, 11787. See Compl. ¶ 2. The Guarantor is a citizen of Suffolk County, New York. See Compl. ¶ 3. In 2022, Baturer entered into a Revenue Based Financing Agreement, an Addendum thereto, and an Agreement for Direct Deposits (ACH Credits) and Direct Collections (ACH Debits) with EBF (collectively, the "Agreement"). See Compl. ¶ 6. Pursuant to the Agreement, EBF purchased $106,500.00 (the "Purchased Amount") or fifteen percent (15%) (the "Specified Percentage") of Baturer's future receipts/accounts receivable for $75,000.00 (the "Purchase Price"). See id. Pursuant to the Agreement, Baturer agreed to contractually designate a single, particular bank account from which EBF was contractually authorized to debit 15% (the "Specified Percentage") of Baturer's daily receivables in the amount of $591.67 (the "Daily Payment") until the Purchased Amount was remitted. See Compl. ¶ 7. The Agreement affirmatively required Baturer to provide EBF with notice if the Daily Payment would not be available for EBF to debit from

2

the contractually designated bank account. See id. EBF performed its part of the bargain by tendering the agreed upon Purchase Price of Baturer's receivables, less certain specified contractual fees disclosed on the very first page of the Agreement. See Compl. ¶ 8. EBF perfected its security interest in the subject accounts receivable by filing a UCC Financing Statement with the New York State Department of State on May 4, 2022. See Compl. ¶ 9; see also Ex. B. As part of the Agreement, Baturer was required to ensure EBF had access to debit the contractually designated bank account on each business day to collect the Specified Percentage of Baturer's revenues or accounts receivable, as purchased by EBF. See Compl. ¶ 10.

On or about May 3, 2022, EBF's access to ACH-debit the contractually designated bank account was blocked. See Compl. ¶ 11; see also Ex. C. Baturer's block of the designated bank account constituted an "Event of Default" under section 3.1 of the Revenue Based Financing Agreement. See Compl. ¶ 12. Pursuant to section 3.2 of the Revenue Based Financing Agreement, upon the occurrence of an "Event of Default," "[t]he full uncollected Purchased Amount plus all fees (including legal fees)… will become due and payable in full immediately." See Compl. ¶ 13. In addition, Baturer agreed to pay "all reasonable costs associated with the Event of Default and the enforcement of [EBF's] remedies…including but not limited to court costs and attorneys' fees." See id. Based upon Baturer's breach of the Agreement, there is due and owing to EBF an unremitted Purchased Amount of $97,624.95, plus a default fee of $5,000, insufficient funds ("NSF") fees of $105.00, and a UCC Fee of $250.00, for a total amount of $102,979.95. See Compl. ¶ 14. Baturer has failed to tender to EBF its unremitted Purchased Amount of receivables, despite demand. See Compl. ¶ 15. EBF has incurred attorney's fees and costs incident to filing this action. See Compl. ¶ 16.

The Guarantor executed a Personal Guaranty of Performance as part of the Agreement. See Compl. ¶ 18; see also Ex. A. The Personal Guaranty of Performance stated in part: "Guarantor agrees to irrevocably absolutely and unconditionally guarantee to [EBF] prompt and complete performance . . . ." DE [1] at ¶ 19. Baturer's block of the contractually designated bank account violated subsection 5.1.2 of the Personal Guaranty of Performance because it constituted action that had an adverse effect on EBF's ability to collect its purchased receivables as purchased under the Agreement. See Compl. ¶ 20.

II.   Procedural History

This action was commenced on June 20, 2023. See DE [1]. On June 21, 2023, summonses were issued to Defendants Baturer and Naime Baturer. See DE [5,6]. On August 15, 2023, Plaintiff filed a motion for service by publication while producing the Affidavits of Non-Service. See DE [12]; see also Ex. A; Ex. B. Plaintiffs motion was granted in part extending service through January 19, 2024 and denied in part without prejudice to renewal for seeking leave to serve Defendants via alternative service. See id. On October 25, 2023, a summons was issued to Defendant Baturer. See DE [14]. On November 1, 2023, a summons was issued to Defendant Naime Baturer. See DE [16]. On December 4, 2023, Plaintiff filed a motion for leave to serve by alternative means producing Returns of Non-Service. See DE [17]; see also Ex. #1-5. On December 12, 2023, Plaintiff's motion for alternative service by email was granted as Plaintiff diligently attempted to serve defendant Naime Baturer at four different addresses in the state of New York via a process server. See DE [17]. Plaintiff provided facts indicating that Naime Baturer can be contacted at the email address baturer1979@gmail.com. See id. On January 17, 2024, the summons was returned executed by EBF. See DE [19].

4

Defendants never responded or moved in response to the complaint. Accordingly, Plaintiff requested entry of a certificate of default. See DE [18]. The Clerk of the Court noted Defendants default on January 19, 2024. See DE [23]. On February 21, 2024, EBF moved for an entry of a judgment of default. See DE [26]. The motion was referred to this Court for Report and Recommendation. See Referral Order, DE [26].

DISCUSSION

I.   Legal Principles

   A.   Standards Applicable to Damages Award Following Default Judgment

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; see also Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011). First, the moving party must obtain a certificate of default from the Clerk of the Court. See Fed. R. Civ. P. 55(a). Once the certificate is issued, the moving party may apply for entry of a judgment of default. See Fed. R. Civ. P. 55(b).

In the context of a default, the well-pleaded allegations set forth in the complaint relating to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155-58 (2d Cir. 1992). But a plaintiff is not entitled to a default judgment just because a party is in default. See City of New York v. Mickalia Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). The court must determine whether the well-pled allegations establish liability as a matter of law. See id. In determining whether to grant a default judgment, the court looks to the same factors which apply to a motion to set aside a default judgment, namely: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result

5

of the denial of the motion for default judgment. See Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170–71 (2d Cir. 2001); United States v. Myers, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017).

If liability is established, the court turns to ascertain damages "with reasonable certainty." Credit Lyonnais Sec., Inc. v. Alcanture, 183 F.3d 151, 155 (2d Cir. 1999). A hearing is not required and affidavits may be sufficient as long as the Court can ensure that there is a basis for the damages sought by way of the proposed default judgment. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

II.     Disposition of the Motion

    A.     Defendants' Default Was Willful

The Court first considers whether the default was willful. A default is considered willful where the defendant fails to answer a complaint without explanation or justification. See S.E.C. v. McNulty, 137 F.3d 732, 738–39 (2d Cir. 1998); Myers, 236 F. Supp. 3d at 707; see also Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that failure to respond to both the complaint and a motion for default judgment demonstrates willful conduct).

Baturer was properly served with a summons and Complaint, which were left with an authorized agent in the Office of the Secretary of State of the State of New York on November 6, 2023. DE [19]. In addition, the Guarantor was properly served via Court approved alternative service via email at mail at baturer1979@gmail.com. DE [20]. Despite being properly served, Defendants failed to answer the Complaint, respond to Plaintiff's motion, or otherwise appear in the action. Accordingly, the Court finds Defendants' default to be willful. See Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23,

2015) ("Defendant has not responded to [p]laintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the [c]ourt in any way. Accordingly, [d]efendant's failure to answer the [c]omplaint and to respond to the instant motion is sufficient to establish willfulness.").

  B. <u>Meritorious Defenses</u>

  The Court is not aware of any meritorious defenses Defendants could present in this matter. In addition, denying the motion for default judgment would be prejudicial to Plaintiff, "as there are no additional steps available to secure relief in this Court." <u>Myers</u>, 236 F. Supp. 3d at 708–09 (quoting <u>Bridge Oil Ltd. v. Emerald Reefer Lines, LLC</u>, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

  C. <u>Liability For Breach of Contract Under The Agreement</u>

  "To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" <u>Orlander v. Staples, Inc.</u>, 802 F.3d 289, 294 (2d Cir. 2015) (quoting <u>Johnson v. Nextel Commc'ns, Inc.</u>, 660 F.3d 131, 142 (2d Cir. 2011)).

  The well-pled allegations of the complaint establish Defendant's liability for breach of contract. The complaint alleges that Baturer entered into a contract to provide EBF with a single, particular bank account form which EBF would debit its purchased receivables until the Purchased Amount was remitted. <u>See</u> Compl. ¶ 7. EBF was contractually authorized to debit 15% (the "Specified Percentage") of Baturer's daily receivables in the amount of $591.67 (the "Daily Payment") from, the contractually designated bank account and Baturer was required to provide EBG with notice if the Daily Payment would not be available for EBF to debit. <u>See</u> <u>id.</u> EBF alleges it performed its part of the bargain by tendering the agreed upon Purchase Price of

7

Baturer's receivables and perfecting its security interest in the subject accounts receivable by filing a UCC Financing with the New York State Department of State on May 4, 2022. See Compl. ¶ 8-9. EBF also alleges that on May 3, 2022, Baturer materially breached the Agreement when EBF's access to ACH-debit the contractually designated account was blocked constituting an "Event of Default" under the Revenue Based Financing Agreement. See Compl. ¶ 11-12.

Baturer's block of the designated bank account is an "Event of Default" under section 3.1 of the Revenue Based Financing Agreement. See Compl. ¶ 12. Pursuant to section 3.2 of the Revenue Based Financing Agreement, upon the occurrence of an "Event of Default," "[t]he full uncollected Purchased Amount plus all fees (including legal fees)… will become due and payable in full immediately." See Compl. ¶ 13. In addition, Baturer agreed to pay "all reasonable costs associated with the Event of Default and the enforcement of [EBF's] remedies…including but not limited to court costs and attorneys' fees." See id. Based upon Baturer's breach of the Agreement, there is due and owing to EBF an unremitted Purchased Amount of $97,624.95, plus a default fee of $5,000, insufficient funds ("NSF") fees of $105.00, and a UCC Fee of $250.00, for a total amount of $102,979.95. See Compl. ¶ 14. Baturer has failed to tender to EBF its unremitted Purchased Amount of receivables, despite demand. See Compl. ¶ 15. EBF has incurred attorney's fees and costs incident to filing this action. See Compl. ¶ 16.

As a result, EBF suffered damages. See Compl. ¶ 14. Accordingly, EBF' has stated a claim for breach of contract.

    D.    <u>Breach of Personal Guaranty</u>

Under New York law, the elements of a "*prima facie* case for breach of a written guaranty ... requires a plaintiff to establish (1) an absolute and unconditional guaranty, (2) the underlying debt, and (3) the guarantor's failure to satisfy the unpaid debt." Myers Indus., Inc. v.

8

Schoeller Arca Sys., Inc., 171 F. Supp. 3d 107, 121 (S.D.N.Y. 2016) (citing City of N.Y. v. Clarose Cinema Corp., 256 A.D.2d 69, 71, 681 N.Y.S.2d 251, 253 (1st Dep't 1998)). All of these elements are present here.

The guaranty is absolute and unconditional. As discussed above, Plaintiff has also pled that Defendants' stop payment left an outstanding balance of $102,979.95 owing to Plaintiff under the Agreement, which remains unpaid. Lastly, Plaintiff has pled that Defendants have failed to reimburse Plaintiff for its losses sustained as a result of the breach. Therefore, this Court respectfully recommends that Plaintiff hasadequately pled a claim for breach of personal guaranty.

Because the Guarantor guaranteed Baturer's obligations under the Agreement, all Defendants are jointly and severally liable for the damages. See Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc., 2011 WL 6034481, at *10 (S.D.N.Y. Dec. 5, 2011) (holding defendants jointly and severally liable for damages stemming from breaches of contract and guaranty); Century Bus. Credit Corp. v. Gargiulo Foods, L.L.C., 2003 WL 21998959, at *1 (S.D.N.Y. Aug. 22, 2003) (same).

E. Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Greyhound Exhibitgroup, 973 F.2d at 158. A court must ensure that there is an adequate basis for the damages sought by a plaintiff before entering judgment in the amount demanded. See Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). A court may make this determination based upon evidence presented at a hearing, but a hearing is not required. See Fed. R. Civ. P. 55(b)(2); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991). A

9

review of detailed affidavits and documentary evidence may be sufficient to assure the court there is an adequate basis for the damages sought. See Cont'l Cas. Co. v. Contest Promotions NY, LLC, 2016 WL 1255726, at *6 (E.D.N.Y. Mar. 28, 2016); see also McLean v. Wayside Outreach Dev. Inc., 624 F. App'x 44, 45 (2d Cir. 2015) (observing that a district court did not abuse its discretion by not holding a hearing to determine damages and only relying on "a single affidavit only partially based upon real numbers.").

1.      Actual Loss Under The Agreement

This Court finds that the basis for the damages sought by EF is adequate. EBF's damages stem from Baturer's failure to ensure that EBF had daily access to debit the contractually designated bank account. See Compl. ¶ 10-14. Baturer's block of the designated bank account constitutes an "Event of Default," and pursuant to section 3.2 of the Revenue Based Financing Agreement, upon the occurrence of an "Event of Default," "[t]he full uncollected Purchased Amount plus all fees (including legal fees)… will become due and payable in full immediately." See Compl. ¶ 12-13. In addition, Baturer agreed to pay "all reasonable costs associated with the Event of Default and the enforcement of [EBF's] remedies…including but not limited to court costs and attorneys' fees." See id. Based upon Baturer's breach of the Agreement, there is due and owing to EBF an unremitted Purchased Amount of $97,624.95, plus a default fee of $5,000, insufficient funds ("NSF") fees of $105.00, and a UCC Fee of $250.00, for a total amount of $102,979.95. See Compl. ¶ 14; see also Parks Aff ¶ 10. Baturer has failed to tender to EBF its unremitted Purchased Amount of receivables, despite demand. See Compl. ¶ 15. Therefore, this Court respectfully recommends judgment be entered in the amount of $102,979.95 against Defendants.

        2.      <u>Interest</u>

Plaintiff further claims it is entitled to prejudgment interest. An award of prejudgment interest is within the Court's discretion. <u>See</u> generally <u>Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.</u>, 67 F.3d 1063, 1071 (2d Cir. 1995). Under New York law, prejudgment interest is recoverable "upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). In New York, the prejudgment rate of interest is nine percent per annum. <u>See</u> N.Y. C.P.L.R. § 5004. The accruement of such interest begins "from the earliest ascertainable date the cause of action existed." <u>See</u> N.Y. C.P.L.R. § 5001(b). In New York, a claim for breach of contract accrues upon breach. <u>See</u> <u>Guilbert v. Gardner</u>, 480 F.3d 140, 149 (2d Cir. 2007).

The complaint alleges a specific date of May 3, 2022, on which Defendants breached the Agreement. <u>See</u> Compl. ¶ 11: <u>see also</u> Ex. C. Accordingly, this Court respectfully recommends EBF be awarded prejudgment interest at a rate of nine percent per annum from May 3, 2022, until the date final judgment is entered.

Plaintiff also claims entitlement to post-judgment interest. Post-judgment interest shall be allowed on any money judgment in a civil case recovered in a district court. 28 U.S.C.A § 1961. Post-judgment interest is calculated from the date of entry of judgment at a rate equal to the weekly average one-year constant maturity treasury yield. <u>Id.</u> Accordingly, this Court respectfully recommends EBF be awarded post-judgment interest at a rate pursuant to 28 U.S.C.A § 1961.

        3.      <u>Attorneys' Fees and Costs</u>

Plaintiff has requested that attorneys' fees and costs be determined at a hearing. Therefore, this Court respectfully recommends that Plaintiff make such an application in accord with the District Court's individual rules.

## CONCLUSION

For these reasons the Court respectfully recommends that Plaintiff's motion for a default judgment, appearing as docket entry No. [26] herein be granted, and that the District Court direct the Clerk of the Court to enter judgment in favor of Plaintiff and against Defendants in the amount of $102,979.95, plus prejudgment interest from May 3, 2022, through entry of judgment. Further, the court respectfully recommends post-judgment interest be awarded at a rate pursuant to 28 U.S.C.A § 1961.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to Plaintiff's counsel via ECF. Furthermore, the Court directs Plaintiff's counsel to (1) serve a copy of this Report and Recommendation by first class mail to Defendants at its last known addresses, and (2) file proof of service on ECF by August 23, 2024. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a

magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Central Islip, New York
August 20, 2024

                                                  /s/ Anne Y. Shields
                                                  Anne Y. Shields
                                                  United States Magistrate Judge